IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2023

## DOUGLAS EUGENE HORTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Henderson County**
No. 18088-1        Joseph T. Howell, Judge

_____

### No. W2022-01371-CCA-R3-PC

_____

The Petitioner, Douglas Eugene Horton, appeals from the Henderson County Circuit Court's denial of his petition for post-conviction relief from his 2018 convictions for two counts of possession with intent to sell a controlled substance, four counts of possession of a firearm with intent to go armed during the commission of a dangerous felony, and four counts of facilitation of possession of a firearm with intent to go armed during the commission of a dangerous felony, for which he is serving an effective fifteen-year sentence. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel allegations for counsel's (1) failure to obtain adequate discovery, (2) failure to challenge the search warrant resulting in the Petitioner's arrest, (3) failure to subpoena the Petitioner's daughter and his girlfriend as witnesses at the trial, (4) failure to play a body camera recording purporting to show officer misconduct, and (5) cumulative errors during the trial. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and J. ROSS DYER, J., joined.

William J. Milam, Jackson, Tennessee, for the Appellant, Douglas Eugene Horton.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Jody S. Pickens, District Attorney General; Albert Earls, Assistant District Attorney General for the Appellee, State of Tennessee.

## OPINION

The Petitioner's convictions relate to evidence recovered after officers conducted surveillance and executed a search warrant at a Henderson County residence. The facts of the case in which the Petitioner was tried with a codefendant were summarized by this court in the Petitioner's appeal of his convictions:

> After conducting surveillance on the residence at 2825 New Flanagan Road for several months and observing the [Petitioner] and his [codefendant], Kenneth Alan Smith, at the residence, officers with the Lexington Police Department (LPD) obtained a search warrant and searched the residence. Upon entry into the residence, officers found the [Petitioner] in the living room on the couch, but [codefendant] Smith was not present during the search. After detaining the [Petitioner] and searching the residence and the outbuilding, officers located and seized methamphetamine, hydrocodone pills, marijuana, drug paraphernalia, and several firearms. The [Petitioner] and [codefendant] Smith were arrested and indicted on the same charges related to the seized contraband. The following evidence was adduced at the [Petitioner's] trial, which took place on November 14-15, 2018.

> Investigator James Robert McCready, who, at the time of this offense, was a narcotics investigator for the City of Lexington, testified that he was the lead investigator on the [Petitioiner's] case. He began his investigation by conducting surveillance at 2825 New Flanagan Road in September 2017, which took place for "at least a couple of months[.]" While conducting surveillance, which he said took place on multiple occasions and consisted of "stationary drive[-]bys where [they] did some mild still shots[,]" he observed the [Petitioner] and [codefendant] Smith at the residence on a "regular basis." Investigator McCready observed the [Petitioner] in the front yard of the residence and "particularly sometimes driving to the residence coming from another location but at the residence in general." He saw the [Petitioner] driving an "older model" Chevrolet pickup truck, which was parked at the residence on the day that the search warrant was executed. Investigator McCready obtained a search warrant for the residence, and, along with several other officers, conducted a search of the residence.

> Investigator McCready stated that he executed the search warrant at approximately 6:30 a.m. on November 14, 2017. Upon entry into the residence, he found the [Petitioner] lying on a couch in the living room wearing flannel pajama bottoms and a white t-shirt. . . . Officers then conducted a "sweep of the couch cushions to make sure there [were] no firearms or anything like that," and, when they pulled back the couch

cushion, officers located a "large bag of green leafy substance which had been identified as marijuana." . . .

. . . .

Investigator McCready located a loaded Smith & Wesson revolver in the front bedroom of the residence. He said that the door to this room was not locked and that "everything [was] open in the house[.]" Investigator McCready also located a loaded, small caliber pistol from North American Arms (NAA) in the front bedroom. He located a Titan revolver in a "small outbuilding" outside the residence that he said was being used for "various barbecues and things of that nature." He said this building was part of the property covered by the search warrant. Lastly, he located a Springfield Savage Arms rifle from the front bedroom of the residence. . . . Investigator McCready stated that he found the Smith & Wesson revolver on top of a "curio cabinet" in the corner of the front bedroom, and he found the Springfield rifle in the closet of that room. Investigator McCready testified that LPD Investigator Bradley Wilson collected $784 from a wallet that contained the [Petitioner's] identification, which was found in a pair of blue jeans in the front bedroom. . . .

. . . .

On cross-examination, Investigator McCready stated that he did not have any evidence regarding the [Petitioner's] whereabouts prior to when he started surveillance at the residence in September 2017. Based on his surveillance, he concluded that the [Petitioner] lived at the residence. Investigator McCready could not recall if the [Petitioner] was lying down or sitting on the couch when he entered the residence, but he observed a blanket and a pillow on the couch and believed the [Petitioner] was startled when they entered. Investigator McCready discovered the bag of marijuana when he pulled up on the far left couch cushion. He said the marijuana was in "plain view" after he removed the cushion and stated, "If you were seated in a seat on a couch, it would be down basically at your right hip in a corner." He agreed that someone sitting on the couch would not be able to feel the bag of marijuana through the couch cushion.

. . . . The hydrocodone pills found in the front bedroom were located in a medicine bag that also contained "a bunch of medication that had [the Petitioner's] name on it[.]" Investigator McCready said most of the other medication in the bag "looked like blood pressure medication, cholesterol pills, and things of that nature[,]" so he did not seize it as evidence. . . .

-3-

Investigator McCready stated that the only indicia of ownership of any of the evidence seized pertained to the location where the evidence was found. He said the names had been scratched off the pill bottles that they seized, so he could not determine to whom they belonged. He believed that the master bedroom at the back of the residence was [codefendant] Smith's room, which he shared with a woman. He did not find any contraband or firearms in [codefendant] Smith's room. Investigator McCready determined that the residence belonged to [codefendant] Smith, although he did not specify whether he rented or owned the property. . . . On redirect examination, Investigator McCready said that he discovered a title to a vehicle with the [Petitioner's] name on it in the front bedroom. On recross examination, Investigator McCready stated that there was no bed in the front bedroom, and he was unsure if there was any mail addressed to the [Petitioner] in that room. He said that the blue jeans that contained the [Petitioner's] wallet were wadded up in a pile of clothes on the floor, and he observed a stack of photographs on the floor, leading him to believe that someone had just moved into the room.

. . . .

TBI Special Agent Carter Dupew tested the evidence in this case and presented the following results: 2.99 grams of methamphetamine, 47.60 grams of marijuana, and hydrocodone. . . . The [Petitioner] did not present any evidence on his own behalf.

Following deliberations, the jury convicted the [Petitioner] of possession of methamphetamine, hydrocodone, and marijuana with intent to sell (Count 1, 3, and 5), facilitation of possession of methamphetamine, hydrocodone, and marijuana with intent to deliver (Count 2, 4, and 6), six counts of possession of a firearm with the intent to go armed during the commission of a dangerous felony (Counts 9, 10, 17, 18, 25, and 26), six counts of facilitation of possession of a firearm with the intent to go armed during the commission of a dangerous felony (Counts 7, 8, 15, 16, 23, and 24), and one count of possession of drug paraphernalia (Count 31).

State v. Douglas Eugene Horton, No. W2019-00948-CCA-R3-CD, 2021 WL 2556646, at *1-5 (Tenn. Crim. App. June 22, 2021). This court reversed and vacated counts 1, 2, 7, 8, 9, 10, and 31 due to insufficient evidence of constructive possession by the Petitioner. Id. at *6-9. The Petitioner filed a timely pro se petition for post-conviction relief alleging the ineffective assistance of counsel, and post-conviction counsel was appointed.

-4-

At the September 9, 2022 post-conviction hearing, trial counsel testified that she was an assistant public defender and was appointed to represent the Petitioner at the time of his arraignment in circuit court. She recalled that the case involved a thirty-one count indictment regarding narcotics and the possession of firearms. She said that she filed a motion for discovery but did not file any other pretrial motions.

Trial counsel testified that she reviewed discovery with the Petitioner and that he understood the materials. She was aware of the Petitioner's history of depression and mental health concerns but said she found "no indication of any competency issues or that any of those conditions would justify requesting a forensic evaluation." She recalled that the Petitioner rejected the State's plea offer because the Petitioner would only accept an offer reducing the charges to misdemeanors and for time-served probation.

Trial counsel testified that she spoke with the State's investigators and with the Petitioner's daughter before the trial. According to counsel, the daughter "didn't have any information that would be of assistance to the defense." Counsel said that she did not call any witnesses at trial, and the Petitioner did not testify.

Trial counsel identified the search warrant issued in the Petitioner's case which listed both the Petitioner and the Petitioner's codefendant. She said the Petitioner maintained that he and the codefendant were friends and that he did not live at the codefendant's house. Counsel stated that she did not file a motion to suppress evidence seized as a result of the search because she felt there was no legal basis to do so.

Trial counsel testified that she did not recall the Petitioner's requesting a particular body camera recording be introduced at trial, although other recordings were played at the trial which showed officers conducting the search. She also did not recall whether the Petitioner wanted her to request a continuance in order to subpoena certain witnesses.

On cross-examination, trial counsel testified that she discussed the State's evidence with the Petitioner. She explained that in order to file a motion to suppress, she would have had to concede that the Petitioner had standing to bring the motion, which would have directly contradicted the defense theory that the Petitioner's mere presence at the codefendant's house did not establish that the items obtained from the search were in the Petitioner's possession. As a result of this theory, she stated that the Petitioner was found not guilty of several counts at trial and, on appeal, this court reversed additional convictions based on the same argument.

Trial counsel testified that the Petitioner was present during the search. She stated that the Petitioner was convicted of possessing drugs and a firearm that were found among his personal property at the codefendant's house. She stated that she was prepared for trial, that she requested a plea offer and made a counteroffer, and that she

-5-

was not surprised by any trial evidence. Counsel also said that recordings depicting an undercover sale of drugs to the Petitioner would have been detrimental to the defense had they been presented at the trial.

Lexington Police Department Investigator Ricky Montgomery testified that he executed the search warrant. He stated that he believed the Petitioner lived at the house because officers saw the Petitioner there on multiple occasions.

On cross-examination, Investigator Montgomery described the property identified in the search warrant as being "an acre and a half to two acres" with "three mobile homes, an outdoor cooking facility and numerous cars and other items scattered throughout the yard." He stated that the Petitioner was present during the search of the property, that the search warrant included "the residence and any outbuildings and vehicles," that drugs were found where the Petitioner was lying on a couch, and that a firearm was found in the Petitioner's clothing.

The Petitioner testified that he discussed plea offers with trial counsel and that he rejected them. He said that he met with counsel four times before the trial, that he "went over what was presented to me as discovery," and that he understood what was being presented to him. He said that he had been diagnosed with depression, anxiety, post-traumatic stress disorder, and nerve damage and that he was "on medication" during the trial. He stated that the only discovery counsel presented was information regarding three undercover drug sales. According to the Petitioner, he never received "any proof of the investigation."

The Petitioner testified that he asked trial counsel to subpoena his daughter and his girlfriend so they could testify that he was not living at the house, but counsel did not. He said that when he realized that his daughter and his girlfriend were not at the trial, he asked counsel to request a continuance, but she refused. He said that he asked counsel to file a motion to suppress evidence obtained from the search of the house, but she did not. He stated that he also asked counsel to introduce a body camera recording that he believed would show an officer placing marijuana in the couch where the Petitioner sat when officers searched the house. He admitted, however, that he had never seen such a recording.

On cross-examination, the Petitioner testified that he was at the house during the search and his subsequent arrest and that he wanted trial counsel to introduce recordings of the three undercover drug sales made at the house. He said that he and counsel discussed "the evidence," including recordings made during the search. He agreed that as a result of counsel's work, he was acquitted of multiple counts.

At the conclusion of the hearing, the post-conviction court denied relief. The court credited the testimony of trial counsel and Investigator Montgomery. The court noted that counsel "saw no basis for [a motion for] suppression" of the evidence obtained from the search warrant and did not find the Petitioner incompetent to stand trial. The court found that the Petitioner did not offer any proof that a motion to suppress would have been successful, nor did the Petitioner offer any proof of a recording depicting an officer placing marijuana in the couch where the Petitioner sat at the time of the search. The court noted that because neither the Petitioner's daughter nor his girlfriend testified at the post-conviction hearing, the court could not determine the substance of their testimony which could have been presented at the trial. The court also noted that counsel spoke with the Petitioner's daughter and concluded the daughter's testimony would not have been helpful to the defense.

As pertinent to this appeal, the post-conviction court made the following findings in a written order: (1) the court credited trial counsel's testimony that she filed and obtained discovery, that she discussed the evidence and facts of the case with the Petitioner, that she attempted to negotiate a plea agreement, and that the Petitioner rejected the State's plea offers; (2) the court credited counsel's testimony that she reviewed the warrant and found no legal basis for filing a motion to suppress; (3) the court found the Petitioner did not demonstrate any legal basis to suppress the evidence obtained based upon the warrant or demonstrate that he would have been likely to prevail on a motion to suppress; (3) the court credited counsel's testimony that she interviewed the Petitioner's daughter and concluded that the daughter's testimony would not have been helpful to the defense at trial; (4) the court concluded that it could not speculate as to the testimony of the Petitioner's daughter and his girlfriend because they did not testify at the post-conviction hearing; and (5) the court found that counsel "was in every way effective" and that her performance did not result in any breach or denial of any right guaranteed to the Petitioner. This appeal followed.

The Petitioner contends that the post-conviction court erred by denying relief. He argues that he is entitled to relief because counsel (1) failed to obtain adequate discovery, (2) failed to file a motion to suppress evidence obtained from the search, (3) failed to call the Petitioner's daughter and the Petitioner's girlfriend as witnesses at the trial, and (4) failed to play a recording purporting to show an officer placing marijuana in a couch during the search of the house. The Petitioner also argues for the first time that he is entitled to relief under the "cumulative error doctrine." The State counters that the post-conviction court properly denied relief. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing

-7-

evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Citations and page references to the record are conspicuously absent from the Petitioner's brief. *See* T.R.A.P. 27(a)(6). The rules of this court warn counsel that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Despite the Petitioner's waiver, we have decided to address the issues raised in order for this appeal to be disposed of in an expeditious manner and brought to a proper

conclusion. *See* T.R.A.P. 2. We caution counsel that compliance with the rules of appellate procedure and of this court is expected.

## 1. Discovery

The Petitioner alleges that trial counsel failed to obtain sufficient discovery, and, as a result, he was not informed of "any proof of the underlying narcotics investigation." The record reflects that the investigation involved several undercover drug transactions with the Petitioner and the codefendant. The Petitioner also acknowledged that he discussed the recordings of the undercover sales with counsel. The post-conviction court credited counsel's testimony that she obtained discovery, which she discussed with the Petitioner. The record supports the court's determination that the Petitioner did not establish any deficiency on this issue by clear and convincing evidence. The Petitioner is not entitled to relief on this basis.

## 2. Motion to Suppress

The Petitioner alleges that trial counsel was deficient for failing to file a motion to suppress evidence obtained as a result of the search of the house.

Our supreme court has held that the two-pronged *Strickland* test requires a petitioner to present additional proof when alleging that counsel was ineffective for failing to file a motion to suppress evidence on Fourth Amendment grounds. *See Phillips v. State*, 647 S.W.3d 389, 402 (Tenn. 2022) (citations omitted). The Petitioner must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Id.* (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

The post-conviction court credited counsel's testimony that she found no legal basis for filing a motion to suppress. Further, counsel testified that her defense strategy was to assert that the Petitioner was not in possession of the items obtained from the search because he was "merely present" at the house. Filing a motion to suppress would have required counsel to assert that the Petitioner had a reasonable expectation of privacy at the house, a position at odds with the defense's strategy. The Petitioner may not "second-guess a reasonably based trial strategy by his counsel." *Adkins*, 911 S.W.2d at 347. The Petitioner has failed to demonstrate deficient performance by counsel. In addition, the Petitioner was found not guilty on numerous counts at the trial, and this court reversed seven convictions as a result of the defense's theory. The record supports the court's determination that the Petitioner did not establish any deficiency on this issue by clear and convincing evidence. The Petitioner is not entitled to relief on this basis.

### 3.     Witness Testimony

The Petitioner alleges that trial counsel should have subpoenaed his daughter and his girlfriend as witnesses at the trial in order to establish that he did not live at the searched house.  The post-conviction court credited counsel's testimony that, after interviewing the daughter, counsel determined that the daughter's testimony would not be helpful to the defense.  The court also noted that it could not speculate as to the daughter's or girlfriend's testimony, because they did not testify at the post-conviction hearing.  *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  The record supports the court's determination that the Petitioner did not establish any deficiency on this issue by clear and convincing evidence.  The Petitioner is not entitled to relief on this basis.

### 4.     Body Camera Recording

The Petitioner alleges that trial counsel should have introduced a body camera recording depicting an officer placing marijuana in the couch where the Petitioner sat at the time of the search.  The record contains no evidence of such a recording, and the Petitioner admitted that he was unaware of its existence.  The post-conviction court denied relief, noting that the Petitioner presented no proof regarding the recording.  *See George Thurman Haynie, Jr. v. State*, No. M2001-01522-CCA-R3-PC, 2002 WL 464822, at *7 (Tenn. Crim. App. Mar. 26, 2002) (denial of post-conviction relief was proper based upon a "total lack of evidence in the record to support [the] Petitioner's assertion"), *perm. app. denied* (Tenn. Sept. 16, 2002).  The record supports the court's determination that the Petitioner did not establish deficiency on this issue by clear and convincing evidence.  The Petitioner is not entitled to relief on this basis.

### 5.     Cumulative Error

The Petitioner argues that relief is appropriate under the "cumulative error doctrine."  In the context of a trial, the cumulative error doctrine requires relief when "multiple errors [are] committed in the trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial."  *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (internal citations omitted); *see State v. Jordan*, 325 S.W.3d 1, 79 (Tenn. 2010) ("'[T]he combination of multiple errors may necessitate . . . reversal . . . even if individual errors do not require relief.'") (quoting *State v. Cribbs*, 967 S.W.2d 773, 789 (Tenn. 1998)).

In contrast, in the context of post-conviction review, "when an attorney has made a series of errors [at the trial] that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice" of an

ineffective assistance of counsel allegation. *Timothy Terell McKinney v. State*, No. W2006-02132-CCA-R3-PD, 2010 WL 796939, at *37 (Tenn. Crim. App. Mar. 9, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010); *see State v. Taylor*, 968 S.W.2d 900 (Tenn. Crim. App. 1997). More than one instance of deficient performance, when considered collectively, can result in a sufficient showing of prejudice pursuant to *Strickland*. *Timothy Terell McKinney*, 2010 WL 796939, at *37; *see Taylor*, 968 S.W.2d at 909. The question is whether counsel's deficiencies "cumulatively prejudiced . . . the right to a fair proceeding and undermined confidence in the outcome of the trial." *Timothy Terell McKinney*, 2010 WL 796939, at *37. Counsel's failure to conduct adequate pretrial preparation and investigation may establish prejudice pursuant to *Strickland*. *Id.*

The Petitioner failed to establish deficient performance by trial counsel. Therefore, the Petitioner has failed to establish multiple deficiencies from which this court might grant relief on the basis of prejudice resulting from the cumulative effect of the alleged deficiencies. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE